*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
*2325 E. Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*Telephone: (602) 274-1100*
*Ty D. Frankel (AZ Bar No. 027179)*
*tfrankel@bffb.com*

*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
*600 W. Broadway, Suite 900*
*San Diego, California 92101*
*Telephone: (619) 756-7748*
*Patricia N. Syverson (AZ Bar No. 020191)*
*psyverson@bffb.com*

*Law Offices of*
**DEVON K. ROEPCKE, PC**
*170 Laurel Street*
*San Diego, CA 92101*
*Telephone: (619) 940-5357*
*Devon K. Roepcke (AZ Bar No. 028495)*
*droepcke@lawdkr.com*

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| James Saunders, | Case No. _____ |
| Plaintiff, | **COLLECTIVE ACTION AND** |
| v. | **CLASS ACTION COMPLAINT** |
| Safelite Fulfillment, Inc., | **[JURY TRIAL DEMANDED]** |
| Defendant. | |

1    Plaintiff James Saunders, individually and on behalf of all others similarly situated

2   (hereinafter referred to as "Plaintiff") for his Complaint against Defendant Safelite

3   Fulfillment, Inc.  ("Safelite") alleges as follows:

4                                    **I. NATURE OF THE CASE**

5       1.    Plaintiff brings this action against Safelite for its unlawful failure to pay

6   overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219

7   (hereinafter "FLSA") and its unlawful failure to pay wages due in violation of the Arizona

8   Wage Statute, A.R.S. §§ 23-351-353, and 23-355.

9       2.    This action is brought as a collective action pursuant to 29 U.S.C. § 216(b)

10  to recover unpaid overtime compensation, liquidated damages, statutory penalties and

11  damages owed to Plaintiff and all others similarly situated.  This lawsuit is also brought as

12  a class action under Federal Rule of Civil Procedure 23, to recover unpaid compensation

13  and treble damages resulting from Safelite's violations of the Arizona Wage Statute.  For

14  collective action and class action purposes, the proposed Class consists of:

15

16              All current and former Safelite sales employees who worked at

17              a Safelite call center in Arizona during the Liability Period

18              ("Class Members").

19

20      3.    For at least three (3) years prior to the filing of this action (the "Liability

21  Period"), Safelite had and continues to have a consistent policy and practice of suffering

22  or permitting sales employees who earned commissions and shift differentials, including

23  Plaintiff, to work well in excess of forty (40) hours per week, without paying them proper

24  overtime compensation as required by federal and state wage and hour laws.  Plaintiff

25  seeks to recover unpaid overtime compensation, including interest thereon, statutory

26  penalties, reasonable attorneys' fees and litigation costs on behalf of himself and all

27  similarly situated Class Members.  Plaintiff and all similarly situated Class Members who

28  may opt-in pursuant to 29 U.S.C. § 216(b) also seek liquidated damages.

4.      Plaintiff intends to request the Court authorize notice to all similarly situated persons informing them of the pendency of the action and their right to "opt-into" this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking overtime compensation and liquidated damages under federal law.

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter and the parties hereto pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

6.      Plaintiff's state law claim is sufficiently related to the FLSA claim that it forms part of the same case or controversy.  This Court has supplemental jurisdiction over Plaintiff's claim under the Arizona Wage Statute pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of Arizona within this District.  Plaintiff was employed by Safelite in this District.

## III. PARTIES

8.      At all times relevant to the matters alleged herein, Plaintiff James Saunders resided in the State of Arizona in Maricopa County.

9.      Plaintiff is a full-time, non-exempt employee of Safelite employed at Safelite's "Contact Center" a call center in Chandler, Arizona beginning in or around August 27, 2012 and continuing until the present.

10.      Plaintiff was initially paid an hourly wage of $10.32 per hour plus non-discretionary incentive pay, which the company terms a "commission," every week. Throughout his employment Plaintiff has received various raises.  In early January of 2017, his hourly rate was increased to $12.83.

11.      Pursuant to 29 U.S.C. § 216(b), attached to and filed with this Complaint as Exhibit A, is the Consent to Become Party Plaintiff and Opt In to Lawsuit, signed by the above-named Representative Plaintiff, James Saunders, opting him into this lawsuit.

12.      Upon information and belief, Defendant Safelite Fulfillment, Inc. is an Ohio corporation authorized to do business in Arizona.

13.     Safelite hires employees like Plaintiff at its Arizona call center to service the company's customers.

14.     Plaintiff and the other similarly Safelite employees are employees as defined in 29 U.S.C. § 203(e)(1) and are non-exempt employees under 29 U.S.C. § 213(a)(1) and A.R.S. § 23-350(2).

15.     At all relevant times, Safelite was an employer as defined by 29 U.S.C. § 203(d) and A.R.S. § 350(3).

16.     At all relevant times, Safelite has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made or business done is greater than $500,000.

## IV. FACTUAL BACKGROUND

17.     Safelite provides auto glass repair and replacement to customers throughout the United States.

18.     Safelite employs hundreds of employees at its call center location in Arizona to sell auto glass repair and replacement services, and provide general customer service.

19.     Plaintiff has been employed by Safelite in a sales role at its Chandler, Arizona call center from on or around August 27, 2012 until the present.

20.     Safelite has customers nationwide, who typically call in to Safelite's call center for assistance with auto glass repair and replacement.

21.     Plaintiff's responsibilities generally consist of fielding telephone calls from individuals with auto glass needs.

22.     Plaintiff receives incoming calls from potential consumers needing auto glass repair or replacement.  He then schedules the necessary service to be performed by a technician working at one of Safelite's many Auto Glass Shops.  During the phone call, Plaintiff can also sell the customer new wiper blades to be installed at the time the glass service is performed.

23.     Plaintiff was paid an hourly wage of $10.32 when he first started working for Safelite and his hourly wage eventually increased to $12.83.

24.     Plaintiff receives additional non-discretionary incentive bonuses for the following: (1) sales incentive pay for meeting or exceeding company sales and retention goals; (2) phone statistic incentive pay meeting or exceeding company phone statistic goals; and (3) wiper blade incentive pay meeting or exceeding company wiper blade sales goals.  When it is earned, this non-discretionary incentive pay is paid out every week on Plaintiff's paycheck under the code "Comm TSR."

25.     For the purposes of Plaintiff's sales incentive pay, customers are divided into three categories: "commercial," "insurance," and "cash."   Safelite sets different numerical sales goals for each of these groups.

26.     "Commercial" customers include mechanic shops, trucking companies, and rental car fleets.  "Commercial" customers are considered the easiest sales to close.  For this reason, sales employees need to meet a high percentage of sales and retention to receive a small percentage of their sales in this category.

27.     "Insurance" customers have been referred to Safelite by their insurance company and their replacement is going to be covered, so they are fairly likely to book with Safelite, but since they could choose to use a different company, the sales and retention goals for this category are slightly lower than those for "commercial" customers.

28.     "Cash" customers are not going through insurance and have no obligation to use Safelite, so they are considered the hardest sale to close.  As such, the sales and retention goals are lowest, and the bonus percentage is highest for "cash" customers.

29.     If Plaintiff meets Safelite's numerical sales goal for any of the customer groups, "commercial," "insurance," or "cash", and beats the average sales number of his co-workers for that customer group, he receives a set percentage of the sales he made to that customer group.

30.     For example if the sales goal for "cash" customers is to make sales in 45% of incoming "cash" customer calls, and the retention goal is 80%, meaning that 80% of the "cash" customers booked complete the services, Plaintiff will receive a 2% commission

1   on all of his "cash" sales if he meets or exceeds the sales and retention goals set by

2   Safelite, and beats the sales and retention average among his co-workers.

3         31.    Plaintiff also receives incentive pay for selling wiper blades to customers as

4   he schedules their services. If he sells wiper blades to 20% of the customers he schedules

5   for service, he receives $1.50 in incentive pay for each wiper blade sold.

6         32.    Plaintiff's incentive pay, termed a "Comm TSR" on his pay check, consists

7   of less than one half of overall earnings during the typical pay period.

8         33.    In addition to sales incentive pay, Safelite also has a practice of paying its

9   employees a shift differential for certain hours they work, including overnight, early

10  morning, and weekend hours. Safelite Employees receive a shift differential of $0.25 per

11  hour for each hour worked between 3:00 p.m. and 10:59 p.m.. Safelite Employees receive

12  a shift differential of $0.50 per hour for each hour worked between 11:00 p.m. and 6:59

13  a.m.. Safelite Employees receive a shift differential of $0.75 per hour for each hour

14  worked between 7:00 a.m. on Saturday and 6:59 a.m. Monday. Shift differentials can

15  aggregate, so an employee working between 11:00 p.m. and 6:59 a.m. on a Saturday

16  would receive both the $0.50 and $0.75 per hour shift differentials for each hour worked.

17  This non-discretionary incentive pay is paid out every week on Plaintiff's paycheck under

18  the code "Cc Shift Diff."

19        34.    In addition to sales incentive pay and shift differentials, Safelite pays its

20  employees quarterly and annual bonuses, which are non-discretionary. In order to receive

21  this bonus, the employee has to have achieved certain goals for the quarter or year period

22  in which the payment is made. If an employee qualifies for the bonus, the amount of the

23  bonus is based on the number of hours the employee worked during the applicable period.

24  When it is earned, this non-discretionary incentive pay is paid out on a separate check

25  under the code "Ic Corp Hourly."

26        35.    Plaintiff routinely works in excess of forty (40) hours per week as part of his

27  regular schedule. For example, during the typical week, Plaintiff is scheduled to work

28  four ten hour shifts. His regular schedule is Monday, Wednesday, Thursday, and Friday

each week from 5:00 a.m to 3:30 p.m., or from 6:00 a.m. to 4:30 p.m.  Plaintiff is expected to prepare his workspace before he starts his shift, and clean up his workspace after his shift ends.  Plaintiff is allowed to be clocked in five minutes before his shift starts and five minutes after his shift ends to complete these tasks, which means that even if he is only scheduled to work forty (40) hours in a week, he will usually accrue some overtime.

36.     Additionally, it is not uncommon for plaintiff to be scheduled to work overtime shifts.  Some such weeks, Plaintiff works between twenty (20) and thirty-five (35) overtime hours.

37.     Over the course of his employment, Plaintiff has worked hundreds of hours of overtime.

38.     When Safelite pays Plaintiff overtime for his hours in excess of forty (40) it calculates his overtime rate as one and one half of his regular hourly rate of pay.  Safelite fails to factor in Plaintiff's non-discretionary incentive pay, termed "Comm TSR," and shift differentials, termed "Cc Shift Diff," into his overtime rate in violation of the FLSA.

39.     For example, Plaintiff's pay statement for the week of March 12, 2016 through March 18, 2016 indicates that he worked 75.52 hours that week.  Plaintiff was paid for 35.52 hours of overtime based on one and one-half of his regular hourly rate of $12.83 per hour for that pay period. Safelite did not factor into his regular rate the $468.08 he earned in incentive pay, termed "Comm TSR," on his pay statement for that pay period, or the $28.48 shift differential payment, termed "Cc Shift Diff," thereby failing to properly calculate his overtime rate in violation of the FLSA.  If Safelite had properly calculated Plaintiff's overtime, his overtime rate for that week would have been $26.38 instead of $16.51.  Safelite's failure to properly calculate Plaintiff's overtime rate caused him to be underpaid $116.78 for this week.  *See* Exhibit B.

40.     Plaintiff's duties, hours and compensation are indicative of the similarly situated employees.

41.     Safelite's improper policies and compensation practices apply to Plaintiff and all similarly situated employees he purports to represent.

42.     For example, Safelite provided its employees, including Plaintiff, with written policies and procedures uniformly applicable to all employees governing the compensation practices applicable to them.

43.     All of Safelite's employees are uniformly subject to the same unlawful compensation practices that Plaintiff is subject to through his employment at Safelite.

### V. COLLECTIVE ACTION ALLEGATIONS

44.     Plaintiff brings his claim under the FLSA, 29 U.S.C. § 201 *et seq.*, as a collective action.  Plaintiff brings this action on behalf of himself and others similarly situated, properly defined in paragraph 2 above.

45.     Safelite's illegal overtime wage practices were widespread with respect to the proposed Class.  The failure to pay proper overtime was not the result of random or isolated individual management decisions or practices.

46.     Safelite's overtime wage practices were routine and consistent.  Throughout the Liability Period, employees regularly were not paid the proper overtime wage despite working in excess of forty hours per week.

47.     Other Safelite employees performed the same or similar job duties as Plaintiff.  Moreover, these employees regularly worked more than forty hours in a workweek.  Accordingly, the employees victimized by Safelite's unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

48.     Safelite's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action.   Thus, Plaintiff's experience is typical of the experience of the others employed by Safelite.

49.     All Safelite employees, including Plaintiff, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40).  Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

## VI. CLASS ACTION ALLEGATIONS

50.     The state law claims under the Arizona Wage Statute are brought as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3).  The Class is defined in paragraph 2 above.

51.     Throughout the Liability Period, Safelite has employed hundreds of Safelite employees in Arizona.  The Class is therefore so numerous that joinder of all members is impracticable.  Members of the Class can readily be identified from business records maintained by Safelite.

52.     Proof of Safelite's liability under the Arizona Wage Statute involves factual and legal questions common to the Class.  Whether Defendants paid Class members the proper wages due in accordance with A.R.S. §§ 23-351, 23-353, 23-355 is a question common to all Class members.

53.     Like Plaintiff, all Class members worked without being paid statutorily required wages.  Plaintiff's claim is therefore typical of the claims of the Class.

54.     Plaintiff has no interest antagonistic to those of other Class members and has retained attorneys who are knowledgeable in wage and hour and class action litigation. The interests of Class members are therefore fairly and adequately protected.

55.     This action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members.

56.     In addition, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The Arizona Wage Statute recognizes that employees who are denied their wages often lack the ability to enforce their rights against employers with far superior resources.  Further, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it difficult for members of the Class to individually redress the wrongs done to them.

57.     Plaintiff's Arizona Wage Statute claim is easily managed as a class action. The issue of liability is common to all Class members.  Although the amount of damages may differ by individual, the damages are objectively ascertainable and can be straightforwardly calculated.

## VII. COUNT ONE

### (Failure to Properly Pay Overtime Wages and Record Keeping Violations - FLSA - 29 U.S.C. § 207 et seq.)

58.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

59.     Plaintiff was a non-exempt employee entitled to the statutorily mandated overtime pay according to the FLSA.

60.     Safelite was an employer pursuant to 29 U.S.C. § 203(d).

61.     Safelite failed to comply with 29 U.S.C. § 207 because Plaintiff worked for Safelite in excess of forty hours per week, but Safelite failed to pay Plaintiff for those excess hours at the statutorily required rate of one and one-half times Plaintiff's regular rate of pay as required by the FLSA.

62.     Safelite's failure to pay overtime to Plaintiff at the proper rate was willful. Safelite knew Plaintiff was working overtime but failed to pay overtime wages at the proper rate.  Safelite had no reason to believe its failure to pay overtime at the proper rate was not a violation of the FLSA.

63.     At all relevant times, Safelite willfully, regularly, and repeatedly failed, and continues to fail to make, keep, and preserve accurate time records required by the FLSA with respect to Plaintiff and the other similarly situated Safelite employees, including records sufficient to accurately determine the wages and hours of employment pertaining to Plaintiff and the employees.

64.     Plaintiff is entitled to statutory remedies provided pursuant to 29 U.S.C. § 216(b), including but not limited to liquidated damages and attorneys' fees.

**VIII. COUNT TWO**

**(Failure to Pay Timely Wages Due - Arizona Wage Statute)**

65.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

66.     Safelite was aware of its obligation to pay timely wages pursuant to A.R.S. § 23-351.

67.     Safelite was aware that, under A.R.S. §§ 23-351-353, it was obligated to pay all wages due to Plaintiff.

68.     Safelite failed to timely pay Plaintiff wages he was due without a good faith basis for withholding the wages.

69.     Safelite has willfully failed and refused to timely pay all wages due to Plaintiff.   As a result of Safelite's unlawful acts, Plaintiff is entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

**IX. REQUESTED RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays:

A.     For the Court to order Safelite to file with this Court and furnish to Plaintiff's counsel a list of the names and addresses of the all Class Members;

B.     For the Court to authorize Plaintiff's counsel to issue notice at the earliest possible time to the Class Members, informing them that this action has been filed and the nature of the action, and of their right to opt-into this lawsuit if they worked hours in excess of forty (40) hours in a week during the Liability Period, but were not paid overtime at the rate required by the FLSA;

C.     For the Court to declare and find that Safelite committed one or more of the following acts:

i.     violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay overtime wages to Plaintiff and persons similarly situated who opt-into this action;

ii.     willfully violated overtime provisions of the FLSA, 29 U.S.C. § 207;

1      iii.    willfully violated the Arizona Wage Statute by failing to timely pay all wages due to Plaintiff;

D.      For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b) and/or treble damages pursuant to A.R.S. § 23-355, to be determined at trial;

E.      For the Court to award interest on all overtime compensation due accruing from the date such amounts were due;

F.      For the Court to award such other monetary, injunctive, equitable, and declaratory relief as the Court deems just and proper;

G.      For the Court to award restitution;

H.      For the Court to award Plaintiff's reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

I.      For the Court to award pre- and post-judgment interest;

J.      For the Court to award Plaintiff's resulting consequential damages, in an amount to be proven at trial; and

K.      For such other relief as the Court deems just and proper.

///
///
///
///
///
///
///
///
///
///
///
///

1

## X. DEMAND FOR JURY TRIAL

2          70.      Plaintiff, on behalf of himself and all others similarly situated, hereby

3  demands trial of his claims by jury to the extent authorized by law.

4          DATED:  October 25, 2017

5                                                      BONNETT, FAIRBOURN, FRIEDMAN
                                                       & BALINT, P.C.
6
7                                                      Ty D. Frankel
                                                       Ty D. Frankel
8                                                      2325 E. Camelback Road, Suite 300
                                                       Phoenix, Arizona 85016
9                                                      Telephone:  (602) 274-1100
                                                       Facsimile:  (602) 798-5860
10                                                     BONNETT, FAIRBOURN, FRIEDMAN &
                                                       BALINT, P.C.
11                                                     Patricia N. Syverson
                                                       600 W. Broadway, Suite 900
12                                                     San Diego, California 92101

13                                                     Law Offices of
                                                       **DEVON K. ROEPCKE, PC**
14                                                     Devon K. Roepcke
                                                       170 Laurel Street
15                                                     San Diego, CA 92101
                                                       Telephone: (619) 940-5357
16                                                     droepcke@lawdkr.com

17

18                                                     Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

- 13 -