*Law Offices of*
***BONNETT, FAIRBOURN,***
***FRIEDMAN & BALINT, P.C.***
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
Ty D. Frankel (027179)
tfrankel@bffb.com

*Law Offices of*
***BONNETT, FAIRBOURN,***
***FRIEDMAN & BALINT, P.C.***
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 756-7748
Patricia N. Syverson (AZ Bar No. 020191)
psyverson@bffb.com

*Law Offices of*
***DEVON K. ROEPCKE, PC***
170 Laurel Street
San Diego, California 92101
Telephone: (619) 940-5357
Devon K. Roepcke (AZ Bar No. 028495)
droepcke@lawdkr.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| James Saunders, | Case No. 2:17-cv-03943-SPL |
| Plaintiff, | **PLAINTIFF JAMES SAUNDERS' MOTION FOR CONDITIONAL FLSA CLASS CERTIFICATION AND TO AUTHORIZE NOTICE TO SIMILARLY SITUATED PERSONS UNDER 29 U.S.C. § 216(b) AND FOR EXPEDITED DISCOVERY** |
| v. | |
| Safelite Fulfillment, Inc., | |
| Defendant. | |

Plaintiff James Saunders ("Saunders") moves this Court for entry of an order: (1) conditionally certifying this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"); (2) authorizing Saunders to mail notice to other potential plaintiffs; (3) approving the Proposed Notice and Consent to Opt-In to Collective Action attached hereto as Exhibits 1 and 2, respectively; and (4) requiring that, within ten (10) days of the Court's ruling on this Motion, Defendant Safelite Fulfillment, Inc. ("Safelite") produce the names, addresses, and email addresses of all current and former Safelite employees who worked as Sales Representatives for Safelite from October 25, 2014 to the present (the "Representatives").

In support of this Motion, Saunders relies on the pleadings of record, a detailed declaration executed by James Saunders (Exhibit 3), and Safelite documents setting forth the Company's compensation policies and procedures applicable to all the Representatives. The evidence and pleadings presented by Saunders sufficiently demonstrate that, pursuant to Safelite policy, Saunders and other similarly situated Representatives frequently were not paid overtime at the correct rate in violation of the FLSA, 29 U.S.C. §§ 201-219. Thus, Saunders respectfully requests that the Court conditionally certify this case as a collective action under section 216(b) of the FLSA and order that notice be issued on an expedited basis to all current and former Safelite employees who worked as Representatives for Safelite from October 25, 2014 to the present.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

James Saunders filed this collective action under the FLSA on behalf of himself and other similarly situated Safelite Representatives. Saunders alleges that Safelite Representatives were required to work significant hours for which they should have received proper overtime pursuant to the FLSA. Saunders alleges that Safelite failed to factor in non-discretionary "incentive pay" and other bonuses that Representatives earned in determining the hourly rate used to calculate overtime pay. This case presents precisely

the kind of wage and hour abuses the FLSA and Arizona's wage laws are meant to remedy. Through this action, Saunders seeks to recover the overtime compensation the Representatives have earned but not been paid.[1]

Numerous similarly situated Representatives continue to be victimized by Safelite's illegal wage practices. As a result, Saunders requests authorization to send notice to potential opt-in plaintiffs and expedite discovery of the names, addresses and email addresses of all current and former Safelite employees who worked as Representatives for Safelite from October 25, 2014 to the present.[2]

## II.     FACTUAL BACKGROUND

Safelite provides auto glass repair and replacement to customers throughout the United States. Compl. at ¶¶ 17, 20; Answer at ¶¶ 17, 20; Saunders Decl. at ¶ 4. Safelite employs hundreds of Representatives at its "Contact Center" – a call center in Chandler, Arizona. Compl. at ¶ 18; Answer at ¶ 18. Plaintiff Saunders was employed as a full-time, non-exempt employee by Safelite as a Telephone Sales Representative at its Chandler, Arizona "Contact Center" from in or around August 27, 2012 and continuing until January 2018. Saunders Decl. at ¶¶ 2-3; Compl. at ¶ 9; Answer at ¶ 9.

All of the Representatives in Arizona had the same or similar job duties. Safelite's Representatives were all uniformly responsible for fielding telephone calls from individuals with auto glass needs. Compl. at ¶ 21; Answer at ¶ 21; Saunders Decl. at ¶ 5. More specifically, Representatives, like Saunders, were responsible for daily activities such as: receiving incoming calls from potential consumers needing auto glass repair or

---

[1] Saunders also alleges violations of the Arizona Wage Statute, A.R.S. §§ 23-351-353 and will pursue class action certification for his state claims under Federal Rule of Civil Procedure 23 at a later time.

[2] A two-year statute of limitations exists for filing a case under the FLSA, but when the causes of action arises from a willful violation, the statute of limitations extends to three years. 29 U.S.C. § 255(a); *see also Sullivan v. City of Phoenix*, 845 F. Supp. 698, 704 (D. Ariz. 1993). The statute of limitations continues to run for each individual's claim until he or she opts in, and thus notifying potential opt-in plaintiffs of this action and their right to opt in is critical. 29 U.S.C. § 256(b); *see also Chastain v. Cam*, No. 3:13-cv-01802-SI, 2014 WL 3734368, at *12 (D. Or. July 28, 2014). With each passing day, many Representatives suffer a reduction in the amount they can recover for Safelite's violations of the FLSA.

1  replacement; scheduling the necessary service to be performed by a technician working at
2  one of Safelite's many Auto Glass Shops; and selling the customers new wiper blades to
3  be installed at the time the glass service is performed. Compl. at ¶ 22; Answer at ¶ 22;
4  Saunders Decl. at ¶ 6. Like Saunders, each of the Representatives was routinely required
5  to work over forty hours per week as part of their regular schedule in order to perform their
6  job duties. Compl. at ¶¶ 35-37; Saunders Decl. at ¶¶ 27-28, 38.

7  Similarly, all of the Safelite Representatives, like Saunders, throughout Arizona
8  were compensated in the same manner. Safelite provided its Representatives with written
9  compensation policies and procedures applicable to all Representatives. Saunders Decl. at
10 ¶¶ 10-12 and Exhibit A. Representatives were paid an hourly wage. Saunders Decl. at ¶
11 7. For example, Plaintiff Saunders was paid an hourly wage of $10.32 when he first started
12 working as a Safelite sales employee and his hourly wage eventually increased to $12.83.
13 Saunders Decl. at ¶ 7; Compl. at ¶ 23; Answer at ¶ 23.

14 Representatives were also paid non-discretionary incentive bonuses, including: (1)
15 an attendance bonus of $1.00 per hour for working all hours scheduled; (2) sales incentive
16 pay for meeting or exceeding company sales and retention goals; (3) phone statistic
17 incentive pay meeting or exceeding company phone statistic goals; and (4) wiper blade
18 incentive pay meeting or exceeding company wiper blade sales goals. Compl. at ¶ 24;
19 Saunders Decl. at ¶¶ 8, 10-12; *see also* Saunders Decl. Exhibit A. When it is earned, this
20 non-discretionary incentive pay is paid out every week on Plaintiff's paycheck under the
21 code "Comm TSR." Compl. at ¶ 24; Saunders Decl. at ¶¶ 8, 10 and Exhibit A. The amount
22 of the incentive pay was calculated at a specific percentage of the sales based on the specific
23 customer group Representatives sold to (i.e., "commercial," "insurance," or "cash"). *See*
24 Compl. at ¶¶ 25-29; Saunders Decl. at ¶¶ 18-23 and Exhibit A. For example, if the sales
25 goal for "cash" customers is to make sales in 45% of incoming "cash" customer calls, and
26 the retention goal is 80%, meaning that 80% of the "cash" customers booked complete the
27 services, Saunders would receive a 2% commission on all of his "cash" sales if he met or
28 exceeded the sales and retention goals set by Safelite, and beat the sales and retention

average among his co-workers. Compl. at ¶ 20; Saunders Decl. at ¶¶ 22-23. And, if Saunders sold wiper blades to 20% of the customers he schedules for service, he received $1.50 in incentive pay for each wiper blade sold. Compl. at ¶ 31; Answer at ¶ 31; Saunders Decl. at ¶ 24; The incentive pay structure was provided to all Representatives. Saunders Decl. at ¶¶ 10-12 and Exhibit A.

In addition to sales incentive pay, Safelite also has a practice of paying its employees a shift differential for certain shifts they work, including overnight, early morning, and weekend shifts. Shift differentials are between $0.50 and $0.75 per hour depending on the shift worked. Shift differentials are treated like bonuses to incentivize Representatives to work certain shifts. When it is earned, this non-discretionary incentive pay is paid out every week on Representatives' paychecks under the code "Cc Shift Diff." Compl. at ¶ 33; Answer at ¶ 33; Saunders Decl. at ¶ 9.

In addition to sales incentive pay and shift differentials, Safelite pays its Representatives quarterly and annual bonuses, which are non-discretionary. In order to receive this bonus, the employee has to have achieved certain numerical goals for the quarter or year period in which the payment is made. If an employee qualifies for the bonus, the amount of the bonus is based on the number of hours the employee worked during the applicable period. When it is earned, this non-discretionary incentive pay is paid out on a separate check under the code "Ic Corp Hourly." Compl. at ¶ 34; Saunders Decl. at ¶ 26.

Safelite, however, uniformly failed to pay Representatives, like Saunders, all the overtime wages they were due. For the overtime hours Safelite did compensate Representatives, Safelite failed to calculate the proper overtime rate by not factoring into a Representative's regular rate of pay from which overtime is determined the amount of non-discretionary incentive pay ("Comm TSR"), and shift differentials ("Cc Shift Diff") they earned each week. Compl. at ¶ 38; Saunders Decl. at ¶ 29. For example, Saunders' pay statement for the week of March 12, 2016 through March 18, 2016 indicates that he worked 75.52 hours that week. Plaintiff was paid for 35.52 hours of overtime based on

one and one-half of his regular hourly rate of $12.83 per hour for that pay period. Safelite did not factor into his regular rate the $468.08 he earned in incentive pay, termed "Comm TSR," on his pay statement for that pay period, or the $28.48 shift differential payment, termed "Cc Shift Diff," thereby failing to properly calculate his overtime rate in violation of the FLSA. If Safelite had properly calculated Plaintiff's overtime, his overtime rate for that week would have been $26.38 instead of $16.51. Safelite's failure to properly calculate Plaintiff's overtime rate caused him to be underpaid $116.78 for this week. *See* Compl. ¶ 39 and Exhibit B (D.E. 1-2); Saunders Decl. ¶ 30 and Exhibit C.

Thus, Safelite engaged in uniform improper policies and compensation practices that applied to and impacted Saunders and all similarly situated Representatives he purports to represent. Compl. at ¶¶ 40-43. Saunders learned through management communications, meetings and trainings, and observations of and conversations with other employees that Safelite's compensation policies applied uniformly to all Sales Representatives. Saunders Decl. at ¶¶ 31-32. Safelite provided its sales employees, including Saunders, with written policies and procedures uniformly applicable to all employees governing the applicable compensation practices. Saunders Decl. at ¶¶ 10-12, 33.

In addition, the uniformity of the policies can be gleaned from Safelite's computer system utilized by the Representatives. Safelite has a computer system called "Safelite University" that contains important job-related information, as well as training modules and quizzes. Safelite's compensation policies and procedures, as well as any changes to them, are contained in the "Safelite University" system. Saunders Decl. at ¶ 33. Any time there were changes to the bonus structure or any other policy at Safelite, a document called a "Fact Sheet" would be generated that stated the changes. A paper copy of the "Fact Sheet" would be placed at each workspace, and an electronic copy would be sent via email to each employee, and it would also be available in "Safelite University". Saunders Decl. at ¶ 14. Once Representatives reviewed the "Fact Sheet," they had to log into "Safelite University" and take a quiz on the policy changes to ensure that they understood them. If they did not pass the quiz, they would have to meet with a supervisor to have the policy

explained to them. If there were any quizzes not yet completed, they would have to complete them before they were able to access any of the other sections of "Safelite University". Saunders Decl. at ¶¶ 15-17 and Exhibit B.

In addition, Saunders has first-hand knowledge that Safelite's compensation policies applied uniformly to all Representatives from having conversations with other Representatives who have the same or similar job duties as he does. Saunders Decl. at ¶ 17. Saunders has first-hand knowledge that as a condition of employment, all TSRs in the Sales Department at Safelight signed the same bonus structure agreement that he did. Saunders Decl. at ¶¶ 10-12, 34. He is aware of this because it was part of the required materials in "Safelite University". In addition, from having conversations with others, including the four individuals Saunders personally identified in his declaration, Saunders is aware that all other TSRs in the Sales Department at Safelight were qualified to receive the same "Comm TSR" non-discretionary incentive bonuses that he received. Saunders Decl. at ¶ 34. Further, Saunders had conversations with two individuals who worked as TSRs at the Special Services Desk regarding their compensation policies. Saunders Decl. at ¶ 35. While those individuals did not qualify to receive "Comm TSR" non-discretionary incentive bonuses, they did qualify to receive the same wiper blade bonus that Sales Department TSRs received. Saunders Decl. at ¶ 35.

In addition, from having conversations with others, including the six individuals Saunders identified in his declaration, Saunders is aware that all TSRs at the Safelite call center were subject to the policy of paying shift differentials based on the hours worked and are qualified to receive the same non-discretionary quarterly and annual bonuses based on their sales. Saunders Decl. at ¶¶ 10-12, 36-37.

Saunders has personal knowledge from other similarly situated Representatives that when they were paid overtime, the non-discretionary pay they received was not factored into their regular rate of pay for purposes of calculating their overtime rate. Their payroll

records will definitively prove this to be true.  Saunders Decl. at ¶¶ 38-39.[3]

**III. LEGAL ARGUMENT**

**A. CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION IS APPROPRIATE BECAUSE SAUNDERS IS SIMILARLY SITUATED TO PUTATIVE OPT-IN PLAINTIFFS.**

Congress enacted the FLSA to shield employees from oppressive working hours and substandard wages.  *See Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981).  The FLSA enables workers to receive "[a] fair day's pay for a fair day's work" and protects them from the "evil of 'overwork' as well as 'underpay.'" *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (quoting 81 CONG. REC. 4983 (1937) (message of President Roosevelt)).  The FLSA exists to protect employees from precisely the type of unlawful wage policies and procedures established by Safelite.

Pursuant to 29 U.S.C. § 216(b) of the FLSA, courts may authorize notice to a class that is "similarly situated" to the named plaintiff.  *Stickle v. SCI W. Mkt. Support Ctr.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *1 (D. Ariz. Sept. 30, 2009); *Wertheim v. State of Arizona*, No. CIV 92-453 PHX RCB, 1993 WL 603552, at *2 (D. Ariz. Sept. 30, 1993). If the plaintiff satisfies the requisite "notice stage" determination that plaintiffs are similarly situated, conditional certification of the proposed class is proper and the case should proceed to the period of notification, which will permit potential class members to opt into the lawsuit.[4]  *See Stickle*, 2009 WL 3241790, at *2; *Wertheim*, 1993 WL 603552,

---

[3] The evidence set forth above is based on Plaintiff's first-hand knowledge and a select few Safelite company documents that Plaintiff had in his possession.  While Plaintiff believes that Safelite has additional information and documents that will support Plaintiff's claims, Safelite has yet to produce such discovery in response to Plaintiff's requests, which may become the issue of a discovery dispute in the near future.  However, given that time is of the essence as the statute of limitations is continuing to run for each individual's claim, Plaintiff believed it was important to file his motion as soon as possible and that the evidence presented to the Court is more than sufficient to satisfy the "lenient" standard by which conditional certification is to be judged.  *See* Section III(A)(1), below.

[4] Courts also accept consents to opt-in to the action from similarly situated employees who join the case prior to the court's official authorization of noticing other similarly situated persons.  *See Wertheim*, 1993 WL 603552, at *8.

- 7 -

at *1. The "similarly situated" standard utilized for collective action certification is less stringent than the requirements of Federal Rule of Civil Procedure 23(b)(3). *Taylor v. AutoZone Inc.*, No. CV-10-8125-PCT-FJM, 2014 WL 5843522, at *2 (D. Ariz. Nov. 12, 2014) (FLSA "similarly situated" standard "remains less stringent than the requirement that common questions predominate in certifying class actions under Rule 23"); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (finding that claims and positions of employees need not be identical to meet § 216(b) similarly situated standard); *Wilson v. Maxim Healthcare Servs., Inc.*, No. C14-789RSL, 2014 WL 7340480, at *2 (W.D. Wash. Dec. 22, 2014) (noting that the "similarly situated" standard is "considerably less stringent" than Rule 23's requirement that common questions predominate over individual ones).

### 1. The initial conditional certification requirement is "lenient."

"The majority of courts,' including those within the District of Arizona, have 'adopted the two-tiered approach[]' in deciding whether to grant FSLA [sic] collection action status." *Villarreal v. Caremark LLC,* No. CV-14-00652-PHX-DJH, 2014 WL 4247730, at *3 (D. Ariz. Aug. 21, 2014) (citing *Anderson v. Ziprealty, Inc.,* No. CV 2012-0332-PHX-JAT, 2013 WL 1882370, at *2 (D. Ariz. May 3, 2013) (citing cases)); *Barrera v. U.S. Airways Group, Inc.,* No. CV-2012-02278-PHX-BSB, 2013 WL 4654567, at *2 (D. Ariz. Aug. 30, 2013) (same); *Stickle,* 2009 WL 3241790, at *2 (same).[5] "'At this first stage, the court require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Villarreal,* 2014 WL 4247730, at *3 (quoting *Stickle,* 2009 WL 3241790, at *2) (internal quotation marks and citations omitted). "'All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that

---

[5] This two-tiered approach utilized in this District has been affirmed by five United States Courts of Appeals. *See White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 877 (6th Cir. 2012)); *Myers v. Hertz Corp.,* 624 F.3d 537, 554–55 (2d Cir. 2010); *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1260 (11th Cir. 2008); *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001).

hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.'" *Wertheim,* 1993 WL 603552, at *1. What is more, "'[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.'" *Juvera v. Salcido,* 294 F.R.D. 516, 520 (D. Ariz. 2013) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001)).

The requirement is a "lenient" burden of illustrating that a plaintiff is similarly situated to others, which may be satisfied with affidavits and the complaint alone. *Goudie v. Cable Commc'ns, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394, at *3-4 (D. Or. Oct. 14, 2008; *see also Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1138-39 (D. Nev. 1999); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007). As can be seen, at this initial, so-called notice stage, a plaintiff's burden "is low." *Villarreal,* 2014 WL 4247730, at *3 (citing, *inter alia, Wellens v. Daiichi Sankyo Inc.,* No. C-13-00581 DMR, 2014 WL 1422979, at *2 (N.D. Cal. Apr. 11, 2014) (internal quotation marks and citations omitted) ("[S]ome court have held that the plaintiff bears a very light burden in substantiating allegations at this [notice] stage.")) "The Court uses a fairly lenient standard because the Court does not have much evidence" in that ordinarily, as here, discovery is just commencing. *See Juvera,* 294 F.R.D. at 520 (citing *Hipp,* 252 F.3d at 1217–1218) (other citation omitted).

**2. Safelite's employment practices are uniformly applied to all of the Representatives.**

Given this lenient burden, motions to certify a class for notification purposes are "typically" granted. *Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014); *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1189 (D. Ariz. 2014). Saunders need only show an identifiable factual or legal nexus between his claims and those of the similarly situated Representatives, such that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies of the FLSA. *See Stickle*, 2009 WL 3241790, at *3 (citing *Wertheim*, 1993 WL 603552, at *1). In fact, district courts have

consistently granted motions for conditional certification under the FLSA in actions brought by individuals who worked as sales representatives. *See, e.g., Padan v. West Business Solutions, LLC,* No. 2:15-cv-00394-GMN-CWH, 2016 WL 304303, at *2-*3 (D. Nev. Jan. 25, 2016) (conditionally certifying class of customer service representatives at call center alleging practice of unpaid off the clock work and unpaid overtime); *Isaacs v. One Touch Direct, LLC,* No. 8:14-CV-1716-T-30, 2015 WL 248658, at *3 (M.D. Fla. Jan. 20, 2015) (conditionally certifying class of call center agents who alleged overtime rate failed to include commissions); *Sherrill v. Sutherland Global Services, Inc.,* 487 F.Supp.2d 344, 346-50 (W.D. N.Y. 2007) (same); *Russell v. Illinois Bell Telephone Co.,* 575 F.Supp.2d 930, 934-37 (N.D. Ill. 2008) (conditionally certifying class of call center employees who alleged off the clock work and unpaid overtime).

Here, Saunders easily satisfies the standard for conditional certification. The key issue is whether the Representatives were properly compensated for the hours they worked. The key facts in this case revolve around uniform compensation policies that apply to all of the Representatives. Under the FLSA, employers must provide proper overtime compensation for hours worked in excess of forty in a workweek. The pleadings and evidence demonstrate that all of the Representatives performed the same or similar duties and under the same conditions. Compl. at ¶¶ 40-43; Saunders Decl. at ¶¶ 11-17, 33-38. Yet, according to Safelite's uniform compensation policies and practices, Representatives did not receive overtime compensation calculated at the proper rate. Compl. at ¶¶ 38-43; Saunders Decl. at ¶¶ 29-32, 39.

Given the foregoing analysis, Saunders has more than satisfied the similarly situated requirement, especially given that the "lower standard for conditional certification applies." *See Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997) ("At the notice stage, courts . . . require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan[.]") (internal quotation marks and citation omitted). The Court should certify this matter as a collective action under the FLSA so that notice to other Representatives can go forward.

### B.   NOTICE SHOULD BE GIVEN TO SIMILARLY SITUATED REPRESENTATIVES.

The many other similarly situated Representatives victimized by Safelite's practices should be notified about this lawsuit so they may opt-in if they desire. While the FLSA does not provide specific procedures by which claimants may opt-in, the United States Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."[6] *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989).

The court's facilitation of notice to potential opt-in plaintiffs serves the broad remedial purpose of the FLSA. *See Brooks v. BellSouth Telecomms., Inc.,* 164 F.R.D. 561, 566 (N.D. Ala. 1995). As the Supreme Court explained, the benefits of a collective action proceeding under § 216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. Once the Court certifies the collective action, there is a strong presumption that authorization of notice follows. *See Wertheim*, 1993 WL 603552, at *6 (providing plaintiffs with multiple chances to draft an acceptable form of notice after defendants' objections to language in notice); *see Ballaris v. Wacker Silltronic Corp.*, No. 00-1627-KI, 2001 WL 1335809 at *3 (D. Or. Aug. 24, 2001) (judge offering "If the parties are unable to reach agreement [on the form of notice], I am available to assist via a telephone conference").

The requirement for notice is the same similarly situated standard applied in the decision to certify the action as collective. The plaintiff must establish that there are similarly situated individuals who may desire to opt into the action. *See Dybach v. State of Florida Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991); *see Camper v.*

---

[6] Although *Hoffman-La Roche* involved litigation arising under the Age Discrimination in Employment Act, subsequent courts have adopted its holding in actions arising under the FLSA, including the District of Arizona. *Villarreal v. Caremark LLC,* 2014 WL 4247730 (D. Ariz. Aug. 21, 2014); *see also Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 147 n.5 (4th Cir. 1992); *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex. 1999); *Garner v. G.D. Searle Pharm. & Co.,* 802 F. Supp. 418, 422 (M.D. Ala. 1991).

*Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519-20 (D. Md. 2000) (explaining that prior to issuing notice in a collective action, plaintiffs must make "some factual showing by affidavit or otherwise" that potential plaintiff group is similarly situated); *D'Anna v. M/A-COM, Inc.,* 903 F. Supp. 889, 893-94 (D. Md. 1995) (requiring only a "preliminary factual showing that a similarly situated group of potential plaintiffs exists" prior to issuing notice). This lenient requirement is satisfied by a "modest factual showing" that the named plaintiffs and other potential plaintiffs "were victims of a common policy or plan that violated the law." *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). When analyzing whether the plaintiff has made the required showing, the court should not evaluate the merits of the plaintiffs' claim. *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 262 (S.D.N.Y. 1997). Also, "[f]actual disputes do not negate the appropriateness of court facilitated notice." *Camper,* 200 F.R.D. at 520.

As explained above, Saunders readily satisfies the similarly situated standard. The pleadings and evidence demonstrate that he and similarly situated Representatives have the same or similar job duties and are subject to the same uniform rules and policies systematically imposed on them by Safelite. The Representatives were improperly denied overtime wage compensation calculated at the proper rate according to company policies uniformly applied to them. *See* Section II, above. Absent notice, the Representatives likely will not receive timely, complete and accurate information about this action, nor will they have meaningful access to the court or an efficient method of vindicating their rights. *Cf. Hoffman-LaRoche,* 493 U.S. at 170 ("[a] collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources").

**C. NOTICE MUST BE EXPEDITED DUE TO THE RUNNING OF THE STATUTE OF LIMITATIONS.**

Similarly situated Representatives unknowingly depend on this Court to authorize notice of the pendency of this case. Notice to prospective plaintiffs should be expedited to toll the running of the statute of limitations as to the claims of potential opt-ins. Under

applicable provisions of the Portal-to-Portal Pay Act, the statute of limitations on the claims of potential plaintiffs continues to run until each individual files a written consent to join the action as a party plaintiff. *See* 29 U.S.C. § 256. Since similarly situated Representatives' claims are eroding with each passing day, notice should be promptly authorized to reduce the losses suffered. In fact, courts have tolled the statute of limitations during the pendency of a decision for conditional certification for equitable reasons. *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).

Authorizing early notice to potential plaintiffs follows the Supreme Court's suggestion that a district court "begin its involvement early, at the point of the initial notice" in actions brought under § 216(b). *Hoffmann-La Roche,* 493 U.S. at 171. The Court discussed the benefits of early involvement by courts:

> A trial court can better manage a major [FLSA] action if it ascertains the contours of the action at the outset. The court is not limited to waiting passively for objections about the manner in which the consents were obtained. By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner.

*Id.* at 171-72. Notice must therefore be expedited because time is of the essence.

### D. THE PROPOSED NOTICE IS FAIR AND ADEQUATE.

As stressed by the Supreme Court, the effectiveness of a collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170. A court-authorized notice prevents dissemination of "misleading communications" and reduces the likelihood that subsequent corrective notices will be necessary. *Id.* at 171.

Saunders' proposal for court-approved notice, which is attached as Exhibit 1, is "timely, accurate, and informative," *id.* at 172, and is similar to the types of notices approved by other courts. *See, e.g., Gjurovich,* 282 F. Supp. 2d at 106-08. The Proposed Notice includes the following information:

- provides notice of the pendency of the action (Ex. 1, § I);

- accurately describes Saunders' claims and Safelite's denial of liabilities (Ex. 1, § II);
- accurately describes the composition of the class (Ex. 1, § III);
- notifies potential plaintiffs of the opportunity to opt-in, explains the procedure for exercising their right to opt-in and informs individuals that they are not required to participate (Ex. 1, §III);
- explains the legal effects of joining the lawsuit and the legal effects of not participating in the lawsuit (Ex. 1, §§ IV & V);
- advises that the Court expresses no opinion regarding the merits of Saunders' claims or Safelite's liability (Ex. 1, § VI);
- accurately recites the prohibition against retaliation for participation in an FLSA action (Ex. 1, § VII); and,
- accurately conveys the unenforceability of any waiver of rights to compensation due under the FLSA (Ex. 1, § VIII).

Saunders requests that the attached Proposed Notice and Consent to Opt-In to Collective Action be mailed by first class mail to all current and former Safelite employees who worked as Representatives for Safelite from October 25, 2014 to the present. Those individuals interested in participating would be required to return their consents to Saunders' counsel in time for their consents to be filed with the Court within 90 days of the mailing of the notice. *See Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 559 (N.D. Cal. 2016) (approving 90 day deadline for filing consents); *Adams,* 242 F.R.D. at 542 (same). To the extent notice is returned as undeliverable, Saunders requests that the Proposed Notice and Consent to Opt-In to Collective Action be emailed to the individual using the last known email address provided by Safelite. The Proposed Notice is fair and accurate and should be approved for distribution.

### IV. SAUNDERS' REQUEST FOR EXPEDITED DISCOVERY OF NAMES AND ADDRESSES OF ALL CURRENT AND FORMER REPRESENTATIVES IS ESSENTIAL TO ENSURE ACCURATE AND TIMELY NOTICE

Saunders seeks expedited discovery of the names, addresses and email addresses of all current and former Safelite employees who worked as Sales Representatives for Safelite from October 25, 2014, to the present, so they may receive the Proposed Notice and Consent to Opt-In to Collective Action form. This information is clearly relevant to the subject matter of the action. *See Hoffmann-La Roche,* 493 U.S. at 170 (holding that the requirement that a defendant produce the names and addresses of former employees for the purposes of facilitating notice is "relevant to the subject matter of the action and that there were no grounds to limit the discovery under the facts and circumstances of [the] case"). Production of this information is not only proper but is necessary to ensure all potential plaintiffs receive notice informing them of the action and their opportunity to opt in. *See Gjurovich,* 282 F. Supp. 2d at 108 (ordering defendants to produce the names and addresses of similarly situated individuals to facilitate distribution of the court-approved notice); *Taylor v. AutoZone, Inc.*, No. CV-10-8125-PCT-FJM, 2011 WL 2038514, at *5 (D. Ariz. May 24, 2011); *Rodriguez v. SGLC, Inc.*, No. 2:08-cv-01971-MCE-KJM, 2009 WL 454613, at *2 (E.D. Cal. Feb. 5, 2009).

Due to the time sensitivity of this action, Saunders requests an order for Safelite to produce the relevant names, addresses and email within ten (10) days of the Court's ruling on this Motion. Saunders also requests that the names and contact information be provided in electronic format (*e.g.*, an Excel spreadsheet), as well as in hard copy format, to further expedite the notice process.

### V. CONCLUSION

Saunders' evidence satisfies the minimal preliminary showing that he and other similarly-situated employees who worked as Representatives did not receive overtime calculated at the correct rate in violation of the FLSA. Certification of this lawsuit as a collective action and the issuance of notice is therefore appropriate. Saunders requests that the Court approve the Proposed Notice, which fairly and accurately describes the litigation

1  and the potential plaintiffs' rights to participate.  Finally, to facilitate distribution of the
2  court-authorized notice, Saunders requests that Safelite be ordered to immediately produce
3  the names and last known addresses and emails of all current and former Safelite
4  employees who worked as Representatives for Safelite from October 25, 2014, to the
5  present.

DATED:  May 4, 2018

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

By  /s/ Ty D. Frankel
Ty D. Frankel
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Patricia N. Syverson
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 756-7748

Law Offices of
DEVON K. ROEPCKE, PC
Devon K. Roepcke (AZ Bar No. 028495)
170 Laurel Street
San Diego, California 92101
Telephone: (619) 940-5357

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

    I, Karen Vanderbilt, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on May 4, 2018.

                                        /s/ Karen Vanderbilt